**Paul D. JOHNSON, Jr.,
Petitioner–Appellant,**

v.

**UNITED STATES of America,
Respondent–Appellee.**

**No. 86–1714.**

United States Court of Appeals,
Seventh Circuit.

Argued Oct. 6, 1987.

Decided Jan. 13, 1988.

As Corrected Jan. 25, 1988.

Rehearing Denied Feb. 10, 1988.

Robert C. Perry, Asst. U.S. Atty., John Daniel Tinder, U.S. Atty., Indianapolis, Ind., for respondent-appellee.

Michael B. Nash, Nash & Nash, Chicago, Ill., for petitioner-appellant.

Before EASTERBROOK, RIPPLE, and MANION, Circuit Judges.

EASTERBROOK, Circuit Judge.

Paul Johnson, a physician, prescribed amphetamines and barbiturates for nonmedical purposes and was convicted of 47 counts of violating 21 U.S.C. § 841(a)(1). In March 1983 Johnson was sentenced to two years' imprisonment, to be followed by five years' special parole. He was fined $75,000 and ordered to pay the costs of prosecution and perform 1,500 hours of public service. Finally, the court revoked the federal certificate that allowed Johnson to prescribe controlled substances; as a practical matter, this precludes Johnson from practicing medicine as a private general practitioner.

Johnson's retained lawyer filed a notice of appeal but later moved to dismiss the appeal. The motion did not comply with Circuit Rule 51(d), which provides that no criminal appeal may be dismissed without the written assent of the client. The lawyer then furnished Johnson's written consent, which recited that the lawyer had moved to drop the appeal and continued: "I concur in my attorney's decision and hereby waive all rights to object or raise any points on appeal." In May 1983 we dismissed the appeal.

After his release from prison Johnson changed his mind. He filed a collateral attack under 28 U.S.C. § 2255, in the nature of a petition for a writ of error coram nobis, see *Wright v. United States*, 732 F.2d 1048, 1050 (2d Cir.1984), raising the sort of contentions that could have been litigated on appeal. He contended, for example, that 21 U.S.C. § 841(a) may not be applied to physicians who possess a certificate allowing them to prescribe controlled substances; that he had been entrapped; that the indictment was defective; that there had been prejudicial publicity; and that prosecutor, judge, and jury all committed improprieties at trial. The district court held that Johnson's letter withdrawing his appeal waived these claims.

That forgoing an appeal bars collateral review of appealable issues—that a petition under § 2255 "will not be allowed to do service for an appeal", *Sunal v. Large*, 332 U.S. 174, 178, 67 S.Ct. 1588, 1590, 91 L.Ed. 1982 (1947)—is an old principle. See also *United States v. Addonizio*, 442 U.S. 178, 184–85, 99 S.Ct. 2235, 2239–40, 60 L.Ed.2d 805 (1979); *United States v. Timmreck*, 441 U.S. 780, 99 S.Ct. 2085, 60 L.Ed.2d 634 (1979); *Hill v. United States*, 368 U.S. 424, 427–28, 82 S.Ct. 468, 471, 7 L.Ed.2d 417 (1962); *Johnson v. United States*, 805 F.2d 1284, 1287–88 (7th Cir.1986). Johnson seeks to avoid these cases on the ground that he has at least some constitutional arguments, which may be raised by a petition under § 2255. The district court erred in relying on waiver, according to Johnson, and should instead have evaluated the withdrawal of his appeal under the "cause and prejudice" standard of *Wainwright v. Sykes*, 433 U.S. 72, 97 S.Ct. 2497, 53 L.Ed. 2d 594 (1977).

We held in *Norris v. United States*, 687 F.2d 899 (7th Cir.1982), that the *Sykes* approach governs failures to appeal, so that a defendant may not raise on collateral attack even constitutional claims that could have been raised on appeal, unless the defendant establishes "cause and prejudice" for the omission. See also *Williams v. United States*, 805 F.2d 1301, 1303–06 (7th Cir.1986) (extending *Norris* by applying the "cause and prejudice" inquiry to failures to appeal from sentencing proceedings after pleas of guilty); *United States ex rel. Spurlark v. Wolff*, 699 F.2d 354 (7th Cir. 1983) (en banc). The Supreme Court recently applied *Sykes* to failures to appeal or seek discretionary review of particular claims within a state court system. *Murray v. Carrier*, 477 U.S. 478, 106 S.Ct. 2639, 2646–48, 91 L.Ed.2d 397 (1986). Although it reserved the question whether the *Sykes* standard would be applied to "*counsel*'s decision not to take an appeal at all", *id.* 106 S.Ct. at 2648 (emphasis added), it did not question the application of *Sykes* to an accused's personal decision not to appeal. We see no reason to question the holding of *Norris*.

*Sykes* took the "cause and prejudice" test from Fed.R.Crim.P. 12(f), which deems certain claims forfeited if not timely presented. The Court held that state and federal forfeiture rules should be parallel. See *Sykes*, 433 U.S. at 84–85, 90–91, 97 S.Ct. at 2505–06, 2508–09; *Francis v. Henderson*, 425 U.S. 536, 96 S.Ct. 1708, 48 L.Ed.2d 149 (1976); *Davis v. United States*, 411 U.S. 233, 93 S.Ct. 1577, 36 L.Ed.2d 216 (1973). At least one case after *Sykes* assimilates the standards in state and federal cases. See *United States v. Frady*, 456 U.S. 152, 167–69, 102 S.Ct. 1584, 1594–95, 71 L.Ed.2d 816 (1982), on which we relied in *Norris*, 687 F.2d at 901, 903. Section 2255 incorporates the rules used in habeas corpus, changing only the court (from the court with jurisdiction of the custodian to the sentencing court). To the extent there should be any difference in the standards of collateral attack, it

should allow preclusion more readily in federal cases. *Carrier* may deprive a defendant of any review by a federal judge, while the forfeiture rule of *Norris* means only that the decision of the first federal judge stands in the absence of "cause and prejudice" justifying further review.

It does not follow from *Norris* and *Carrier,* however, that inquiry into "cause and prejudice" governs the outcome of every case. Our case involves a considered waiver, not a default. It should be harder to rescind a conscious choice than to recoup from an unconsidered omission. The principal issue in *Norris* was whether a footnote in *Kaufman v. United States,* 394 U.S. 217, 220 n. 3, 89 S.Ct. 1068, 1071 n. 3, 22 L.Ed.2d 227 (1969), had survived *Sykes.* Kaufman appealed his conviction but neglected to raise some issues. When he filed a petition under § 2255 the government argued that the omission precluded further litigation. The Supreme Court replied in note 3:

> This suggestion is contrary to our decisions that failure to take a direct appeal from conviction does not deprive a federal post-conviction court of power to adjudicate the merits of constitutional claims; the question rather is whether the case is one in which refusal to exercise that power would be appropriate. See *Fay v. Noia,* 372 U.S. 391, 438–440 [83 S.Ct. 822, 848–849, 9 L.Ed.2d 837] (1963); *Henry v. Mississippi,* 379 U.S. 443, 451–452 [85 S.Ct. 564, 569–570, 13 L.Ed.2d 408] (1965).

This certainly is not a case where there was a "deliberate by-pass" of a direct appeal. Appointed counsel had objected at trial to the admission of certain evidence on grounds of unlawful search and seizure, but newly appointed appellate counsel did not assign the admission as error either in his brief or on oral argument of the appeal. After oral argument of the appeal, however, [Kaufman] wrote a letter to appellate counsel asking him to submit to the Court of Appeals a claim of illegal search and seizure of items from his automobile. Counsel forwarded [Kaufman's] letter to the Clerk of the Court of Appeals who notified counsel that [Kaufman's] letter had been given to the panel which had heard and was considering the appeal. The opinion of the Court of Appeals affirming [Kaufman's] conviction does not appear to pass on the search-and-seizure claim.

*Kaufman* was a case of an omitted issue, and it assimilated the scope of review under § 2255 to that permitted in the review of state decisions by habeas corpus. At the time, that standard was the "deliberate bypass" rule of *Fay v. Noia.* Our opinion in *Norris* asked whether only "deliberate bypass" on appeal would foreclose collateral review after *Sykes* and concluded that forfeitures too could have that effect—a conclusion fortified by *Carrier.*

The principles of *Sykes* are designed for forfeitures—for oversights, blunders, and other defaults. This is how the Court always describes them. For example, *Carrier* states that the approach of *Sykes* applies to "defaults on appeal as to those at trial." 106 S.Ct. at 2647. The Court has not allowed relief from a considered waiver on identical terms. Until this case no one has doubted that when there *is* a deliberate bypass of an appeal, that is the end of the line for all issues that could have been raised on appeal.

A waiver, an intentional relinquishment of a known right, is effective unless involuntary. The Court in *Kaufman* looked for such a waiver and did not find one. Our Rule 51(d), however, is designed to ensure that no criminal appeal is dismissed unless the defendant files a formal waiver. The defendant must demonstrate that he knows about his right to appeal and deliberately forswears it. Such a declaration is as binding as any other waiver. A plea of guilty, for example, waives a score of constitutional rights and precludes their resurrection at a later date. See *Tollett v. Henderson,* 411 U.S. 258, 93 S.Ct. 1602, 36 L.Ed.2d 235 (1973). Defendants may waive the right to counsel; indeed they have a constitutional right to do so, see *Faretta v. California,* 422 U.S. 806, 95 S.Ct. 2525, 45 L.Ed.2d 562 (1975). They may waive the right to have counsel who has no conflict of interest. E.g., *United States v. Levine,* 794 F.2d

1203, 1206 (7th Cir.1986). We therefore have no reason to doubt the continued force of the conclusion, implicit in *Kaufman*, that a waiver of the right to appeal surrenders all claims that could have been raised on appeal.

Even a waiver goes only so far. An involuntary waiver may be set aside. "Involuntariness" is a term of many meanings. Some cases, such as *Moran v. Burbine*, 475 U.S. 412, 106 S.Ct. 1135, 1141–42, 89 L.Ed.2d 410 (1986), equate "involuntariness" with oppressive conduct by the state and hold that lack of information (plus some deceit by the police) do not add up to involuntariness. Cf. *Schneckloth v. Bustamonte*, 412 U.S. 218, 93 S.Ct. 2041, 36 L.Ed.2d 854 (1973). Other cases, such as *Johnson v. Zerbst*, 304 U.S. 458, 464, 58 S.Ct. 1019, 1023, 82 L.Ed. 1461 (1938), hold that almost any shortfall of information may spoil a waiver of the right to counsel; perhaps a similarly lax definition of voluntariness should be employed here. The approach of *Zerbst*, however, would either collapse the voluntariness inquiry into the definition of "cause" or make waivers easier to escape than are negligent defaults. Neither approach could be right; "involuntariness" must be a more demanding standard than "cause". No sensible system of criminal justice makes it easier to get out of a deliberate waiver than to avoid the consequences of a procedural default.

One aspect of "cause" after *Carrier* is constitutionally ineffective assistance of counsel, and Johnson maintains that his lawyer was ineffective. *Tollett* says that ineffective assistance of counsel may be the basis for setting aside a guilty plea. Perhaps this same approach would govern waivers of the right to appeal as well as the definition of "cause". Yet no court to date has held that ineffective assistance permits an appeal despite a waiver, when no obstacle of the state's making interfered with the defendant's exercise of choice. In *Fay* the defendant chose not to appeal because that would have exposed him to the death penalty; the Court thought that the "grisly choice whether to sit content with life imprisonment or to travel the uncertain avenue of appeal which, if successful, might well have led to a retrial and the death sentence" (372 U.S. at 440, 83 S.Ct. at 849) made the decision not to appeal ineffectual. It may be that *Carrier* requires courts to look for such governmental obstacles in all cases.

Johnson does not contend that the government imposed a steep price on the privilege of appeal or engaged in tactics that would deprive his decision of its voluntary quality. Cf. *Colorado v. Connelly*, —— U.S. ——, 107 S.Ct. 515, 522, 93 L.Ed. 2d 473 (1986) ("coercive police activity is a necessary predicate to the finding that a confession is not 'voluntary' within the meaning of the Due Process Clause"; action under an insane delusion may be voluntary); *Miller v. Fenton*, 474 U.S. 104, 106 S.Ct. 445, 88 L.Ed.2d 405 (1985) (the inquiry into voluntariness calls for an appreciation of the character of the government's conduct, not simply an examination of the suspect's state of mind). That a choice is hard and made with imperfect information does not make it involuntary. Here as in *Moran* a decision may be voluntary even if poorly considered, for it is "the product of a free and deliberate choice rather than intimidation, coercion or deception". *Id.* 106 S.Ct. at 1141.

Johnson's choice was the product, he tells us, of his desire to apply to the district court for a reduction of sentence under Fed.R.Crim.P. 35. According to Johnson, his lawyer told him that an appeal would be expensive, that he would be out of prison by the time the court got 'round to deciding the appeal, and that after dropping his appeal he could file a motion for a reduction of sentence under Fed.R.Crim.P. 35 with a greater prospect of success. The defendant cannot press his claims in two courts at once but must choose. *Berman v. United States*, 302 U.S. 211, 58 S.Ct. 164, 82 L.Ed. 204 (1937); *United States v. Distasio*, 820 F.2d 20, 23 (1st Cir.1987); *United States v. Hill*, 447 F.2d 817, 819 (7th Cir.1971). Johnson saw the opportunities in the district court as superior. This choice was impelled by the attractiveness of an opportunity and not the terror of the alternative. That is all the difference in

the world. See *Henn v. National Geographic Society*, 819 F.2d 824, 828–29 (7th Cir.1987). If there were some constitutional problem in limiting the defendant to one forum at a time, Johnson might have a point; but it is not one he raises.

We need not finally determine the role constitutionally ineffective counsel would play in this inquiry, for Johnson's counsel was not ineffective (at least in the relevant respects). That counsel overestimated the chance of success of the Rule 35 motion is not sufficient reason to resurrect the appeal. In *Smith v. Murray*, 477 U.S. 527, 106 S.Ct. 2661, 91 L.Ed.2d 434 (1986), the defendant decided not to raise particular grounds in support of a petition for a discretionary writ from the state's highest court. His lawyer concluded that the court was unlikely to reverse, so it was futile to ask. Later the defendant sought collateral relief, contending both that his counsel's appreciation of the probabilities was mistaken at the time and that subsequent decisions had made the odds more favorable. The Court held this insufficient, in language that is applicable here as well (*id.* 106 S.Ct. at 2666–67, citations omitted):

> Our cases ... leave no doubt that a deliberate, tactical decision not to pursue a particular claim is the very antithesis of the kind of circumstance that would warrant excusing a defendant's failure to adhere to a state's legitimate rules for the fair and orderly disposition of its criminal cases....
>
> Here the record unambiguously reveals that [Smith's] counsel ... consciously elected not to pursue [a particular claim] before the Supreme Court of Virginia. The basis for that decision was counsel's perception that the claim had little chance of success in the Virginia courts. With the benefit of hindsight, [Smith's] counsel in this Court now contends that this perception proved to be incorrect. Even assuming that to be the case, however, a state's subsequent acceptance of an argument deliberately abandoned on direct appeal is irrelevant to the question whether the default should be excused on federal habeas....

Notwithstanding the deliberate nature of the decision not to pursue [the contention] on appeal—a course of conduct virtually dispositive of any effort to satisfy *Sykes*'s "cause" requirement—[Smith] contends that the default should be excused because [his lawyer's] decision, though deliberate, was made in ignorance. Had he investigated the claim more fully, [Smith] maintains, "it is inconceivable that he would have concluded that the claim was without merit or that he would have failed to raise it."

The argument is squarely foreclosed by our decision in *Carrier*, which holds that "the mere fact that counsel failed to recognize the factual or legal basis for a claim, or failed to raise the claim despite recognizing it, does not constitute cause for a procedural default."

If the error or inadvertence of counsel on appeal, acting without the defendant's consent, bars further review because it is not "cause", then the personal choice of the defendant to abandon his appeal after advice that is, at worst, an error in retrospect, also bars further review.

Johnson filed a 118–page "addendum" to his petition under § 2255 devoted largely to detailing his grievances with his trial. One of the issues he seeks to raise is ineffective assistance of counsel at trial. The effective conduct of the trial, however, is not a precondition to a waiver of appeal. The question that matters now is whether Johnson made a voluntary choice to abandon his appeal. None of Johnson's fulminations about the trial suggests that the government induced him to abandon the appeal or otherwise calls into question the constitutional adequacy of the choice.

One matter remains. The waiver of appeal covers only the matters that could have been raised on appeal. Ineffective assistance of counsel at trial may be raised under § 2255 rather than on direct appeal when it is necessary to supplement the record in order to establish the claim. *United States v. Ellison*, 798 F.2d 1102, 1106 (7th Cir.1986); see *United States v. Ramsey*, 785 F.2d 184, 194 (7th Cir.1986); *United States ex rel. Duncan v. O'Leary*,

806 F.2d 1307, 1312–15 (7th Cir.1986). Sometimes, however, the grounds on which counsel is said to be ineffective may be evaluated on the existing record, and if so the claim is forfeited if not raised. See, e.g., *Cartee v. Nix*, 803 F.2d 296, 301–04 (7th Cir.1986). The matters Johnson seeks to present are apparent on the record and therefore do not justify his failure to present them on appeal in 1983. We do not foreclose the possibility that additional evidence might permit a collateral attack; we conclude only that any claims that could have been raised in 1983 have been waived and may not be raised now.

AFFIRMED

RIPPLE, Circuit Judge, concurring.

I concur in the judgment.

The majority is quite correct that, despite the Supreme Court's reticence on the precise issue,[1] this circuit has concluded that the "cause and prejudice" test of *Wainwright v. Sykes*, 433 U.S. 72, 97 S.Ct. 2497, 53 L.Ed.2d 594 (1977), governs a case such as this one where there has been a complete failure to appeal the judgment of conviction. *See United States ex rel. Spurlark v. Wolff*, 699 F.2d 354 (7th Cir. 1983) (en banc); *Norris v. United States*, 687 F.2d 899 (7th Cir.1982); *see also Williams v. United States*, 805 F.2d 1301, 1303–06 (7th Cir.1986).

The Supreme Court has made it clear that "cause" under the *Wainwright v. Sykes* formula can be based on constitutionally ineffective assistance of counsel (that is, performance which cannot meet the test of *Strickland v. Washington*, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984)). Indeed, in *Murray v. Carrier*, 477 U.S. 478, 106 S.Ct. 2639, 2645–46, 91 L.Ed. 2d 397 (1986), the Court explicitly noted that ineffective assistance of counsel can constitute "cause" for failure to raise a specific point on appeal. This rule applies even when that failure is a result of "counsel's deliberate decision." *Smith v. Murray*, 477 U.S. 527, 106 S.Ct. 2661, 2667, 91 L.Ed.2d 434 (1986). The fact that this case involves a complete waiver of appellate rights, rather than a failure to appeal a particular matter, hardly justifies a different approach. In such a situation, constitutionally ineffective assistance of counsel remains a basis for "cause" under *Wainwright v. Sykes*. A guilty plea, like a complete waiver of appeal, involves the definitive waiver of legal rights. Yet, in *Tollett v. Henderson*, 411 U.S. 258, 266–69, 93 S.Ct. 1602, 1607–09, 36 L.Ed.2d 235 (1973), the Court, in an opinion by now-Chief Justice Rehnquist, explicitly held that constitutionally ineffective assistance of counsel can justify collateral attack of a guilty plea.

Before one can establish "cause" based on the constitutionally ineffective assistance of counsel, there must, of course, be an adequate showing that the ineffective assistance of counsel *caused* the failure to appeal. *See Cartee v. Nix*, 803 F.2d 296, 301 (7th Cir.1986), *cert. denied*, —— U.S. ——, 107 S.Ct. 1584, 94 L.Ed.2d 774 (1987). When there has been an explicit personal waiver of appellate rights by the defendant, it certainly ought not be presumed that such causality exists. Rather, the defendant must shoulder a substantial burden in demonstrating that such an explicit waiver was caused by the professionally inadequate assistance of counsel.

Here, however, we need not concern ourselves with the question of causality. The application of the "cause and prejudice" test to the facts of this case does not require that we reach that issue. Here, the appellant simply contends that the tactical choices that he made with the advice of his lawyer were the product of ineffective assistance of counsel. In essence, he simply asks that we "second-guess counsel's assistance," *Strickland*, 466 U.S. at 689, 104 S.Ct. at 2065, and, with the benefit of hindsight, determine that his counsel's tactical decisions were not correct. *Strickland* explicitly forbids our engaging in such an exercise. *Id.* This fact alone ends the matter. The appellant has simply failed to establish constitutionally ineffective assistance of counsel and therefore cannot dem-

---

1. *See Murray v. Carrier*, 477 U.S. 478, 106 S.Ct. 2639, 2648, 91 L.Ed.2d 397 (1986).

onstrate "cause" for failing to exercise his appellate rights.