**William P. VAN DAALWYK, Plaintiff,**

v.

**UNITED STATES of America, Defendant.**

No. 91–C–711.

United States District Court, E.D. Wisconsin.

April 20, 1992.

Eric J. Klumb, Asst. U.S. Atty., Milwaukee, Wis., for Defendant.

William P. Van Daalwyk, pro se.

## DECISION AND ORDER

WARREN, Senior District Judge.

Before this Court is the petitioner's motion for a writ of habeas corpus pursuant to 28 U.S.C. § 2255. For the following reasons, the Court finds that this petition constitutes an abuse of writ and the petition is denied pursuant to Rule 9(b). *See* 28 U.S.C. § 2254 Rule 9(b) (Rules Governing Habeas Corpus Proceedings).

## I. FACTUAL AND PROCEDURAL BACKGROUND

On September 25, 1985, the petitioner, William Van Daalwyk, and four others were charged in a 32–count indictment with various drug and tax-related offenses. R. 1. The petitioner was charged only with conspiracy to distribute cocaine and possession of cocaine with the intent to distribute. His trial, at which he was the sole defendant, commenced on February 18, 1986, at which time jury selection took place. The

government used two of its peremptory challenges to strike the only two blacks on the 31 person venire. Affidavit of Deputy United States Attorney Eric J. Klumb.[1]

At the time of the petitioner's trial, *Batson v. Kentucky*, 476 U.S. 79, 106 S.Ct. 1712, 90 L.Ed.2d 69 (1986) had not been decided, though the case was pending before the United States Supreme Court. After the jury selection, Van Daalwyk, a white man, requested a mistrial based upon the prosecution's exercise of peremptory challenges to remove the two black veniremen. The prosecution argued that the petitioner had no basis upon which to object to the exclusion of two blacks since the defendant was white. This Court agreed and denied the motion.

On April 30, 1986, following Van Daalwyk's conviction, but before sentencing on May 22, 1986, the Supreme Court published its decision in *Batson v. Kentucky*. *Batson* held that purposeful racial discrimination in selection of the venire violates a black defendant's right to equal protection. During post-conviction proceedings, Van Daalwyk moved for a new trial, arguing that the jury selection procedures in his case were impermissible in light of *Batson*. He specifically claimed that the use of peremptory challenges to exclude blacks violated his constitutional rights. Before imposing its sentence, this Court asked the government to address the petitioner's jury selection claims. The government distinguished Van Daalwyk's circumstances from *Batson* itself, where the defendant was black and where all black venireman had been struck. The prosecutor reasoned as follows:

> The Government had a black witness in this case, and if anything, if there was a consideration at all, we would have left people on the jury because we had a witness who was black in the case, and we didn't do that. There is just no indication whatsoever that there was any indication of animus in this case and the

standard of *Batson* in the government's opinion ought not apply.

Sent.Tr. p. 9.

The petitioner disagreed with the government's analysis, arguing that the Supreme Court did not limit *Batson* to black defendants. Defense counsel argued:

> And one of the interests that *Batson* acknowledged exists is the right of minority groups, in this case blacks, to be able to serve as jurors, as part of our jury system. and that by deliberately excluding any group by the use of peremptory strikes denies that racial group its guarantee of equal protection of the law.

Sent.Tr. p. 10.

This Court found that to fall under the scope of *Batson*, the petitioner must show that he was a member of a cognizable racial group and that the prosecution had exercised peremptory challenges to remove members of his race. *See, e.g.*, Sent.Tr. p. 13. Accordingly, Van Daalwyk's motion for a new trial was denied.

On appeal, Van Daalwyk challenged the use of peremptory strikes to exclude blacks. Nevertheless, the Seventh Circuit affirmed the conviction. *United States v. Van Dall Wyk*, 840 F.2d 494 (7th Cir.1988). Following affirmance, Van Daalwyk did not petition the Supreme Court for certiorari.

On June 12, 1989, the defendant filed his first petition for § 2255 relief. He alleged that he was entitled to a new trial based upon the government's failure to disclose alleged *Brady* material. The United States opposed relief by pleadings filed on July 11, 1989. R. 90. The first petition for § 2255 relief made no mention of a *Batson*-like claim.

On July 1, 1991, the petitioner filed a second motion, which is now before the Court, seeking relief under 28 U.S.C. § 2255. He asserts that his Fourteenth Amendment rights were violated when both black veniremen were struck during

---

1. The government struck Lonnie Lee Saffold with its first peremptory challenge, and Michael Gibson with its sixth. *Id.*

the jury selection of his trial. On September 23, 1991, the government filed a brief opposing the second § 2255 petition. It contended that Van Daalwyk must show "cause" and "prejudice" for not asserting the *Batson*-like claim in his first § 2255 motion. Since he could have constructed the *Batson*-like claim at the time of the first § 2255 motion, the government alleged that the petitioner's failure to do so constitutes abuse of writ.

On October 30, 1991, Van Daalwyk filed a reply brief contending he had "cause" for not asserting the *Batson*-like claim in his first § 2255 motion. He cited the Advisory Committee Note following 28 U.S.C. § 2254 and Rule 9(b) that states in part:

> There are instances in which petitioner's failure to assert a ground in a prior petition is excusable. A retroactive change in the law and newly discovered evidence are examples.

The petitioner asserted that the second petition is based upon a new development in the law, *Powers v. Ohio*, — U.S. —, 111 S.Ct. 1364, 113 L.Ed.2d 411 (1991). Therefore, he requested that his petition proceed to an evidentiary hearing.

## II. ANALYSIS

■ Under the rules which govern habeas petitions, a district court may dismiss a second or successive petition if a petitioner alleges new and different grounds and the judge finds that failure to assert those grounds in a prior petition constituted an abuse of the writ. Rule 9(b), 28 U.S.C. § 2254. Whether a petition should be dismissed for an abuse of writ is within the discretion of the district court. *Sanders v. United States*, 373 U.S. 1, 21, 83 S.Ct. 1068, 1080, 10 L.Ed.2d 148 (1963).

■ The doctrine of abuse of the writ bars a prisoner from asserting a constitutional claim in a subsequent habeas proceeding when he had not raised the claim in the initial federal application. *McCleskey v. Zant*, — U.S. —, 111 S.Ct. 1454, 113 L.Ed.2d 517 (1991). *McCleskey* held that if in a successive petition, a prisoner raises a claim that could have been raised in a prior petition, then that claim is barred unless

the prisoner can satisfy the rule of *Wainwright v. Sykes*, 433 U.S. 72, 97 S.Ct. 2497, 53 L.Ed.2d 594 (1977). A petitioner can satisfy the rule by demonstrating that there is "cause" for not having raised the claim in the initial petition, and that there will result "actual prejudice" if the court does not consider the claim under these circumstances. A determination of cause requires a showing that the movant was impeded by some objective factor external to the defense. *McCleskey*, 111 S.Ct. at 1472. Even if those two criteria are not met, the failure to raise the claim in an earlier petition may still be excused if the petitioner can show that a "fundamental miscarriage of justice"—the conviction of an innocent person—would result from a failure to entertain the claim. *Id.* 111 S.Ct. at 1470.

While *McCleskey* was decided in the context of a state petitioner seeking federal habeas relief, and the instant case concerns a federal prisoner seeking § 2255 relief, *McCleskey* is nevertheless applicable. As the Court in *McCleskey* recognized, habeas corpus and § 2255 relief should be governed by similar standards:

> On its face, § 2255 appeared to announce a much stricter standard of abuse of the writ standard than its counterpart in § 2214. We concluded in *Sanders*, however, that the language "cannot be taken literally" and construed it to be the "material equivalent" of the abuse of writ standard in § 2244.

*Id.* at 1465 (citations omitted).

■ Procedural rules governing habeas petitions are applicable to § 2255 motions. *United States v. Frady*, 456 U.S. 152, 167–169, 102 S.Ct. 1584, 1594–1595, 71 L.Ed.2d 816 (1982) (*Sykes'* cause and prejudice standard was applicable to § 2255 movants). Consistent with this approach, the Seventh Circuit has found that:

> Section 2255 incorporates the rules used in habeas corpus, changing only the court (from the court with jurisdiction of the custodian to the sentencing court). To the extent there should be any difference in the standards of collateral attack, it should allow preclusion more readily in federal cases.

*Johnson v. United States*, 838 F.2d 201, 202–203 (7th Cir.1988).

■ The cause and prejudice analysis adopted for cases of procedural default apply to the abuse of writ inquiry.[2] When a prisoner files a subsequent application, the government bears the burden of pleading "abuse of the writ." The government may satisfy this burden if, with clarity and particularity, it notes petitioner's prior writ history, identifies the claim that appears for the first time, and alleges that the petitioners have abused the writ. *McCleskey*, — U.S. at —, 111 S.Ct. at 1470. The burden then shifts to the petitioner, who must show that there was no abuse of writ. To excuse his failure to raise the claim earlier, he must show cause for failing to raise it and prejudice therefrom, as those concepts have been defined in the procedural default decisions. The petitioner's opportunity to meet the burden of cause and prejudice does not include an evidentiary hearing if the district court determines as a matter of law that the petitioners cannot satisfy the standard. *Id.* 111 S.Ct. at 1470.

■ If the petitioner cannot show cause, the failure to raise the claim in an earlier petition may nonetheless be excused if he can show that a fundamental "miscarriage of justice" would result from a failure to entertain the claim. Application of the cause and prejudice standard in the abuse of writ context does not mitigate the force of *Teague v. Lane*, 489 U.S. 288, 109 S.Ct. 1060, 103 L.Ed.2d 334 (1988), *reh'g denied*, 490 U.S. 1031, 109 S.Ct. 1771, 104 L.Ed.2d 206 (1989), which prohibits the retroactive application of new law to claims raised in federal habeas. *McCleskey*, 111 S.Ct. at 1470.

### A. GOVERNMENT'S BURDEN OF PLEADING ABUSE OF WRIT.

As noted above, the government bears the burden of pleading abuse of writ. The government satisfies this burden if, with clarity and particularity, it notes petitioner's prior writ history, identifies the claims that appear for the first time, and alleges that the petitioners abused the writ. *Id.* at 1470.

■ The government in this case has satisfied its burden of pleading abuse of writ. In its brief, the government notes that the defendant never challenged the jury selection procedures in a prior § 2255 motion. In 1989, Van Daalwyk filed a § 2255 motion premised solely on government violations of the rule of *Brady v. Maryland*, 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963). Because the *Batson* claim did not appear in the defendant's first § 2255 motion, the government alleged that the instant motion should be dismissed for abuse of writ. Therefore, the government has met its burden of pleading abuse of writ.

### B. CAUSE AND PREJUDICE

■ Since the government has satisfied its burden of pleading abuse of writ, the petitioner now has the burden to disprove the abuse by showing "cause" for failing to raise the claim in the first petition and "prejudice" therefrom. *McCleskey*, — U.S. at —, 111 S.Ct. at 1470. A determination of "cause" requires a showing that the movant was impeded by some objective factor external to the defense. *Id.* 111 S.Ct. at 1472.

As a basis for cause, Van Daalwyk asserts that the instant petition is based upon a new development of law, the case of *Powers v. Ohio*, — U.S. —, 111 S.Ct. 1364, 113 L.Ed.2d 411 (1991), where the Supreme Court held that a white defendant can challenge the racially discriminatory selection of the jury by the government. In support of this argument, the defendant cites to the Advisory Committee Note following 28 U.S.C. § 2254 and Rule 9(b) of the Rules governing Habeas Corpus Pro-

---

**2.** Since the petitioner's writ for habeas corpus was denied because of abuse of the writ, this Court did not address the denial of the writ under procedural default. However, the petitioner never applied to the United States Supreme Court for certiorari after his *Batson* claim was denied by the Seventh Circuit. Therefore, using the same cause and prejudice analysis, the writ would also be denied as a procedural default.

ceedings which states "there are instances in which petitioner's failure to assert a ground in a prior petition is excusable. A retroactive change in the law and newly discovered evidence are examples."

*Powers v. Ohio* appears to extend the holding in *Batson,* which allowed black defendants to object to the prosecution's exclusion of black veniremen, to white defendants. Justice Kennedy, in writing for the majority, stated that *Batson* was not just designed to protect individual defendants from the harm caused when a defendant is tried by a tribunal from which members of his own race have been excluded, but also recognized that a prosecutor's discriminatory use of peremptory challenges harms the excluded jurors and the community at large. *Id.* 111 S.Ct. at 1368. Thus, in *Powers,* the Supreme Court extended *Batson* and allowed a white defendant to object to the prosecutions use of peremptory strikes to exclude black veniremen.

■ Since *Powers* is an extension of *Batson,* and not new law, it is not affected by the Supreme Court's holding in *Teague v. Lane,* 489 U.S. 288, 109 S.Ct. 1060, 103 L.Ed.2d 334 (1988), which prohibits the retroactive application of new law to claims raised in collateral attack. However, the petitioner is barred from obtaining federal habeas corpus relief under *Reed v. Ross,* 468 U.S. 1, 104 S.Ct. 2901, 82 L.Ed.2d 1 (1984). The Supreme Court in *Reed,* applying the cause and prejudice standard, held where a constitutional claim is so novel that its legal basis is not reasonably known, a defendant has "cause" for his failure to raise the claim. *Id.* at 16, 104 S.Ct. at 2910.

■ Van Daalwyk does not have "cause" for his failure to raise the claim because he was reasonably aware of the constitutional claim subsequently pronounced in *Powers* at the time he filed his § 2255 petition. His awareness is evidenced by the following facts. First, the petitioner preserved this claim at the jury selection before the district court by challenging the exclusion of black veniremen based on *Batson.* Next, during the postconviction proceeding, he moved for a mistrial under *Batson.* The defense counsel argued:

And one of the interests that *Batson* acknowledged exists is the right of minority groups, in this case blacks, to be able to serve as jurors, as part of our jury system, and that by deliberately excluding any group by the use of peremptory strikes denies that racial group its guarantee of equal protection of the law.

Finally, the defendant raised the issue again on appeal to the Seventh Circuit. Because the facts show the defendant raised the *Batson* claim at both trial and appeal, the constitutional claim was not novel to him at the time of his first § 2255 petition. Therefore, the defendant cannot argue that he falls under the *Reed* exception to Rule 9(b).

The petitioner's failure to meet the "cause" and "prejudice" standard is also supported by *Smith v. Murray,* 477 U.S. 527, 106 S.Ct. 2661, 91 L.Ed.2d 434 (1986). In *Smith,* a petitioner's appeal to the Virginia Supreme Court failed to assign error to the admission of a psychiatrists testimony. The defense counsel later explained that he failed to pursue the issue because of his perception that the claim had little chance for success. In the intervening time, the Virginia courts accepted that the psychiatrist's testimony should have been excluded. When the defendant tried to raise the claim for habeas corpus relief, the United States Supreme Court concluded that a state's subsequent acceptance of an argument "deliberately abandoned on direct appeal is irrelevant to the question whether the defendant should be excused on federal habeas." *Id.* at 534, 106 S.Ct. at 2666. The Supreme Court concluded that Smith had failed to show "cause," and hence was barred from obtaining federal habeas relief.

Like the petitioner in *Smith,* Van Daalwyk failed to raise the Fourteenth Amendment claim under his first § 2255 petition. Therefore, the defendant has failed to show "cause," and hence is barred from obtaining relief under the second § 2255 petition.

## C. MISCARRIAGE OF JUSTICE

■ If the defendant cannot show "cause," failure to raise the claim be excused if he can show that a fundamental "miscarriage of justice" would result from

a failure to entertain the claim. *McCleskey,* — U.S. at ——, 111 S.Ct. at 1470.

*Murray v. Carrier,* 477 U.S. 478, 488, 106 S.Ct. 2639, 2645, 91 L.Ed.2d 397 (1986), created a limited exception to the forfeiture rule of *Sykes* in circumstances of manifest injustice or fundamentally unfair incarceration:

> We remain confident that, for the most part, "victims of a fundamental miscarriage of justice will meet the cause-and-prejudice standard." But we do not pretend that this will always be true. Accordingly, we think that in an extraordinary case, where a constitutional violation has probably resulted in the conviction of one who is actually innocent. a federal habeas court may grant the writ even in the absence of a showing of cause....

*Carrier,* 477 U.S. at 495–496, 106 S.Ct. at 2649. *See also Engle v. Isaac,* 456 U.S. 107, 135, 102 S.Ct. 1558, 1575, 71 L.Ed.2d 783 (1982). Thus, a federal court may set aside the cause-and-prejudice test and permit a habeas petition if, due to a fundamentally unjust trial, an innocent defendant was convicted. *Buelow v. Dickey,* 847 F.2d 420, 427 (7th Cir.1988).

In this § 2255 petition, Van Daalwyk asserts that the harm from discriminatory jury selection extends beyond that inflicted on himself and the excluded juror to touch the entire community. The petitioner, however, does not assert that he was innocent of the crime for which he was convicted. In fact, the petitioner does not claim the failure to have black venireman in any way affected his guilty verdict. Therefore, in this case, there was no fundamental "miscarriage of justice" because there is no evidence that an innocent defendant was convicted.

### IV. CONCLUSION

For the reasons set forth herein, the Court hereby DENIES the petitioner's § 2255 petition.

SO ORDERED.