79 F.3d 1150
 NOTICE: Seventh Circuit Rule 53(b)(2) states unpublished orders shall not be cited or used as precedent except to support a claim of res judicata, collateral estoppel or law of the case in any federal court within the circuit.
Tommy MITCHELL, also known as Daniel McIntosh, Petitioner-Appellant,
v.
UNITED STATES of America, Respondent-Appellee.
 No. 95-2149.
 United States Court of Appeals, Seventh Circuit.
 Submitted March 14, 1996.*
Decided March 15, 1996.
Rehearing Denied May 14, 1996.
 ORDER
 
 1
 Narcotics detectives from East St. Louis, Illinois arrested Tommy Mitchell on October 23, 1993 and charged him with possession of heroin with intent to distribute and conspiracy to distribute heroin in violation of 21 U.S.C. §§ 841(a)(1), 846. Mitchell at first pleaded not guilty to these charges, but on the second day of his trial, he changed his plea to guilty. After extensively questioning Mitchell to insure that he understood the implications of his change of plea, the court accepted Mitchell's guilty plea on February 23, 1994.
 
 
 2
 Prior to his sentencing, however, Mitchell obtained new counsel and moved to withdraw his guilty plea. Mitchell claimed that he pleaded guilty only because his original trial counsel, Andrea Smith, erroneously informed him that he faced a minimum of thirty years' imprisonment if he proceeded with his trial and was found guilty. Mitchell also claimed that Smith refused to investigate his allegations that the police had altered tape recordings they had surreptitiously made of his drug transactions. After a hearing at which the trial court heard the testimony of both Mitchell and Smith, the court denied Mitchell's motion to withdraw his guilty plea. The court sentenced him to 135 months' imprisonment on both the possession and conspiracy counts, to be served concurrently.
 
 
 3
 Mitchell filed a direct appeal--No. 94-2771--to this court. He claimed that he had been denied effective assistance of counsel by Smith's misinformation as to the penalties he faced and by her refusal to investigate his claim that the police altered the tape recordings. On September 12, 1994, however, Mitchell filed a pro se "Motion to Voluntarily Dismiss Direct Appeal." On September 22, 1994, Mitchell filed the present petition pursuant to 28 U.S.C. § 2255. The district court denied Mitchell's petition and this appeal followed.
 
 
 4
 Mitchell claims in this appeal that he is actually innocent of the charges to which he pleaded guilty, that the police lacked probable cause to arrest him, and that the police entrapped him. These claims are not cognizable on a § 2255 motion. Relief under § 2255 is limited to "error[s] of law that [are] jurisdictional, constitutional, or constitute[ ] ... fundamental miscarriage[s] of justice." Bischel v. United States, 32 F.3d 259, 263 (7th Cir.1994). These claims merely assert defenses that Mitchell waived when he pleaded guilty; he cannot raise them in a collateral attack. See, for example, Belford v. United States, 975 F.2d 310, 313 (7th Cir.1992); Johnson v. United States, 838 F.2d 201, 202 (7th Cir.1988).
 
 
 5
 Mitchell's final claim is that he was denied effective assistance of trial counsel. He reiterates his assertions that Smith misinformed him as to the range of penalties he faced if he proceeded with his not guilty plea and that she refused to investigate his allegation that the police tampered with the tape recordings. His claim of ineffective assistance, however, rests entirely on evidence in the trial record. Thus, Mitchell could have raised this claim on direct appeal; indeed, he did raise it in his direct appeal, but then chose voluntarily to dismiss that appeal. Because Mitchell did not pursue this claim on direct appeal when he could have, he forfeited it, and cannot now raise it in a collateral attack. United States v. Taglia, 922 F.2d 413, 418 (7th Cir.1991), cert. denied, 500 U.S. 927 (1991); Johnson, 838 F.2d at 206.
 
 
 6
 Apparently, Mitchell dismissed his direct appeal because he believed that he could raise a claim of ineffective assistance of counsel only in a petition for collateral relief. Even if he had properly raised this claim, however, his assertions have no merit: the record indicates that Smith accurately informed Mitchell of the range of penalties he faced. At first, Smith believed Mitchell would be sentenced as a career offender under § 4B1.1 of the Sentencing Guidelines. On November 23, 1993, she sent Mitchell a letter explaining to him the range of penalties he faced if so charged and the benefits of a two point reduction in his offense level for acceptance of responsibility if he pleaded guilty. Smith later learned that one of Mitchell's two previous convictions was not for a felony, and hence could not serve as a predicate offense for § 4B1.1. Smith sent a letter to Mitchell on February 9, 1994--two weeks before his trial--correctly explaining the possible ranges he could face under the Guidelines depending on which enhancements the district court applied to his crime, and correctly explaining the benefits of pleading guilty under these scenarios.
 
 
 7
 Moreover, even if--despite Smith's detailed letter--Mitchell was still under some misconception as to the possible range of punishments he faced depending on whether he pleaded guilty or continued with his trial, before accepting Mitchell's guilty plea the trial court went to great lengths to explain both the statutory minimum and maximum Mitchell faced and the Guidelines range under which he likely would be sentenced. The trial court ended its explanation with the following colloquy:
 
 
 8
 THE COURT: You understand that if you go to trial and get convicted, you may not get these two points [for acceptance of responsibility] we're talking about, but other than that, you have the same exposure as far as the sentence is concerned as you have by pleading guilty, you understand that?
 
 
 9
 MITCHELL: Yes.
 
 
 10
 Thus, Mitchell has not shown either that Smith's advice to him was erroneous or that he suffered any prejudice as a result of that advice. Accordingly, this argument has no merit. United States v. Allender, 62 F.3d 909, 913 (7th Cir.1995), cert. denied, 116 S.Ct. 781 (1996).
 
 
 11
 Mitchell fares no better with his assertion that he received ineffective assistance of counsel because Smith refused to investigate his claim that he was framed by the police. The prosecution had overwhelming evidence against Mitchell, including 248.7 grams of 70% pure heroin that Mitchell had on his person when he was arrested. Moreover, throughout the judicial proceedings against him, Mitchell continuously lied. For example, he claimed to be an American citizen although he is in fact an illegal alien; he claimed to hold a college degree in engineering when in fact he does not. Smith thus had no reason to believe Mitchell's assertion that analyzing the tapes would yield helpful evidence, nor has Mitchell provided any evidence to substantiate that assertion. Thus, we cannot say that Smith's decision not to analyze the tape recordings was unreasonable or that she thereby rendered Mitchell ineffective assistance of counsel, United States v. Morrison, 946 F.2d 484, 500 (7th Cir.1991), nor do we have any reason to believe Mitchell was prejudiced by that decision.
 
 
 12
 AFFIRMED.
 
 
 
 *
 After examining the briefs and the record, we have concluded that oral argument is unnecessary in this case; accordingly, the appeal is submitted on the briefs and the record. See Fed.R.App.P. 34(a); Cir.R. 34(f)