**UNITED STATES of America, Plaintiff–Appellee,**

v.

**Jose RAMIREZ, Defendant–Appellant.**

No. 98–3945.

United States Court of Appeals, Seventh Circuit.

Submitted April 23, 1999.*

Decided June 25, 1999.

* This case was scheduled for argument on April 23, 1999. However, after examining the briefs, the panel was of the unanimous view that oral argument was unnecessary. Oral argument was therefore canceled, and the case was submitted on the briefs and the record. *See* FED. R.APP. P. 34(a).

Andrew B. Baker, Jr. (submitted), Office of the United States Attorney, Dyer, IN, for Plaintiff–Appellee.

John Maksimovich, Highland, IN, for Defendant–Appellant.

Before BAUER, RIPPLE, and ROVNER, Circuit Judges.

ILANA DIAMOND ROVNER, Circuit Judge.

A jury convicted Jose Ramirez on charges that he conspired to possess marijuana with the intent to distribute, *see* 21 U.S.C. § 846, possessed marijuana with the intent to distribute, *see* 21 U.S.C. § 841(a)(1), and used or carried a firearm during and in relation to a drug trafficking offense, *see* 18 U.S.C. § 924(c)(1). R. 89. The district court sentenced Ramirez to a prison term of 108 months on the two narcotics convictions, and to a consecutive term of 60 months on the firearms charge, for a total of 168 months. R. 138. Ramirez appeals, contending with respect to the firearm charge that the government's proof at trial as well as the jury instructions constructively amended that charge. The government has confessed error, and after an independent review of the record and the briefs, *see Griffin v. United States*, 109 F.3d 1217, 1219 (7th Cir.1997), we agree that Ramirez's conviction on this charge must be reversed.

The pertinent facts are few. As part of a reverse-sting operation, federal authorities, in conjunction with the Indiana State Police and the Indianapolis Police Department, placed over 900 kilograms of marijuana with a street value of $2 million in a

rented storage locker in Indianapolis. With the help of a confidential informant, an undercover officer made arrangements to sell the marijuana to two individuals—Messrs. Saucedo and Velencia—who were targets of the government's investigation. Ramirez was recruited to bring a van to Indianapolis from East Chicago, Indiana to retrieve the marijuana; Ramirez in turn enlisted his co-defendant, Enrique Herrera, to assist him. Saucedo and Velencia met Ramirez and Herrera in Indianapolis and led them to the storage locker, where somewhat less than half of the stored marijuana was transferred into the van. All of this took place under surveillance, and a short while after Ramirez and Herrera drove away in the van, an Indiana State Police officer pulled them over under the guise of a routine traffic stop. Herrera and Ramirez gave the officer their consent to search the van, and that search uncovered not only the marijuana but also a revolver and ammunition that Herrera and Ramirez had brought with them.

In a superseding indictment, Herrera and Ramirez were jointly charged with conspiring to possess (Count 1)and possessing the marijuana (Count 2) with the intent to distribute, and with knowingly using and carrying a firearm in relation to a drug trafficking crime (Count 3). R. 27.[1] Both men pleaded not guilty and proceeded to trial. Herrera testified that he knew nothing about the cargo that he and Ramirez were to transport until they arrived at the storage locker. Ramirez claimed the same ignorance, and explained that he nonetheless did as he was asked once he discovered that narcotics were involved because he was afraid of Saucedo and Velencia. The jury apparently deemed Ramirez to be the more culpable of the two; it convicted Herrera on Count 2 alone (the possession charge), R.90,[2] but found Ramirez guilty on all three counts of the superseding indictment, R. 89.

At issue here is solely Ramirez's conviction on Count 3. The language of the superseding indictment is central to the appeal, because it alleged that Ramirez carried the firearm not in relation to the drug trafficking offenses of possessing marijuana with the intent to distribute or conspiring to do so, but rather in relation to the crime of "knowing and intentional unlawful distribution of marijuana." R. 27 at 4. As the parties agree, there is no evidence in the record that Ramirez and Herrera ever distributed or attempted to distribute the marijuana they obtained from the storage locker.

However, the jury was never instructed that Ramirez must have carried the firearm in connection with the distribution of marijuana. It was instead advised that the government bore the burden of proving that the defendant knowingly carried a firearm during and in relation to a "drug trafficking crime," which was defined as "an offense that is a felony and involves the distribution, manufacture, or importation of any controlled substances." R. 95 No. 27. The instructions therefore permitted the jury to convict Ramirez for carrying a firearm in relation to a drug trafficking offense other than the distribution offense specifically referenced in Count 3, including the crimes of conspiring to possess or possessing marijuana with the intent to distribute. Indeed, the court specifically apprised the jury that "the charges in Counts 1 and 2 of the indictment are drug trafficking crimes prosecutable in the United States." *Id.* Given that the jurors found Ramirez guilty on both Counts 1 and 2, it comes as no surprise that they convicted him on Count 3 as well.

---

1. A fourth charge named Ramirez alone and was later dismissed. *See* R. 84.

2. The district court subsequently sentenced Herrera to a prison term of 63 months. R.

102. We affirmed that sentence last year in an unpublished order. *United States v. Herrera*, No. 98–1432, 165 F.3d 33 (7th Cir.) (unpublished), text in Westlaw, 1998 WL 597642.

Our review of the conviction is constrained by Rule 52(b) of the FEDERAL RULES OF CRIMINAL PROCEDURE. Ramirez did not file a motion for a judgment of acquittal on Count 3 either at the close of the government's case or within seven days of the verdict. FED.R.CRIM.P. 29(a), (c); *see* Tr. 140. Nor did he object to the jury instructions, which broadened the potential basis of conviction. FED.R.CRIM.P. 30; *see* Tr. 369. Thus, we will disturb his conviction only if we are convinced that a plain error occurred. *E.g.*, *United States v. Todosijevic*, 161 F.3d 479, 483 (7th Cir. 1998). For purposes of Rule 52(b), a "plain error" is one that is obvious, that "affects substantial rights," and "seriously affects the fairness, integrity, or public reputation of judicial proceedings." *United States v. Meadows*, 91 F.3d 851, 855 (7th Cir.1996), quoting *United States v. Olano*, 507 U.S. 725, 732, 113 S.Ct. 1770, 1776, 123 L.Ed.2d 508 (1993). Ramirez contends primarily that plain error occurred in the constructive amendment of Count 3 by way of the government's proof at trial and the court's instructions to the jury. That error, he contends, deprived him of his Fifth Amendment right to be tried only on those charges included in the grand jury's indictment. *See Schmuck v. United States*, 489 U.S. 705, 717–18, 109 S.Ct. 1443, 1451, 103 L.Ed.2d 734 (1989); *Stirone v. United States*, 361 U.S. 212, 217, 80 S.Ct. 270, 273, 4 L.Ed.2d 252 (1960). A constructive amendment will rise to the level of plain error justifying reversal when it amounts to "a mistake so serious that but for it the [defendant] probably would have been acquitted." *United States v. Gunning*, 984 F.2d 1476, 1482 (7th Cir.1993); *see also United States v. Cusimano*, 148 F.3d 824, 828 (7th Cir. 1998); *United States v. Feinberg*, 89 F.3d 333, 339 (7th Cir.1996), *cert. denied*, 519 U.S. 1133, 117 S.Ct. 997, 136 L.Ed.2d 876 (1997); *United States v. Remsza*, 77 F.3d 1039, 1044 (7th Cir.1996). We believe that the error at issue here is of that gravity.

As we have noted, the superseding indictment linked the defendants' use and carrying of the firearm not to the possession or the conspiracy to possess marijuana with the intent to distribute, but to the actual distribution of marijuana. Count 3 alleged:

> On or about August 30, 1995, in the Northern District of Indiana,
>
> ### JOSE RAMIREZ
>
> and
>
> ### ENRIQUE HERRERA,
>
> defendants herein, did knowingly use and carry a firearm, namely, one Charter Arms 44 Special Revolver, with Serial Number 1119930, during and in relation to a drug trafficking crime, *being the knowing and intentional unlawful distribution of marijuana*, a Schedule I controlled substance; in violation of Title 21, United States Code, Section 841(a)(1);
>
> All in violation of Title 18, United States Code, Sections 924(c)(1), and 2(a).

R. 27 at 4 (emphasis supplied). In *United States v. Willoughby*, 27 F.3d 263, 266 (7th Cir.1994), we concluded that comparable phrasing identifying a particular drug trafficking offense rendered the specified predicate offense an essential element of the 924(c) charge. As a result, we reasoned, "[a] conviction that rests, no matter how comfortably, on proof of *another* offense cannot stand." *Id.* (emphasis supplied), citing *United States v. Miller*, 471 U.S. 130, 138–40, 144, 105 S.Ct. 1811, 1816–18, 1819, 85 L.Ed.2d 99 (1985).

In all important respects, we have exactly the situation here with which we were confronted in *Willoughby*. In that case, the indictment charged the defendant with the use of a firearm during and in relation to the distribution of cocaine. However, there was no proof that the defendant had used a gun in connection with that particular offense. Instead, the evidence at most established that he had used the gun in connection with the distinct offense of possessing cocaine with the intent to distrib-

ute. Under these circumstances, we concluded that a constructive amendment had occurred and that it was necessary to reverse the defendant's conviction on the section 924(c) charge:

> [E]ven if an adequate § 924(c) charge need not indicate by name a particular drug trafficking offense, by the way it framed the indictment in this case, the government narrowed the legitimate scope of the weapons charge to Willoughby's use of a firearm in connection with the distribution of cocaine, not the mere possession with intent to distribute cocaine or "drug trafficking" generally. A conviction relying upon a link between the gun and the latter described conduct would constitute an impermissible broadening of the indictment, for its basis was necessarily excluded from the charge as phrased.
>
> The discrepancy here is more than a simple matter of semantics unrelated to the substance of the offense charged. Distribution and possession with intent to distribute are two separate trafficking offenses, two separate crimes .... Because "distribution" relates to different conduct than does "possession with intent to distribute", ... a charge referencing one of these trafficking offenses cannot be deemed the equivalent of a charge referencing the other.

*Id.* at 266–67 (citation omitted). *See also United States v. Randall,* 171 F.3d 195, 209–10 (4th Cir.1999); *United States v. Reyes,* 102 F.3d 1361, 1364–65 (5th Cir. 1996).

The same error taints Ramirez's conviction, and we believe it to be a plain error. The record makes clear (and as noted both the defendant and the government agree) that there was no evidence Ramirez ever used or carried a firearm in connection with the distribution of marijuana. Instead, the proof demonstrated at most that Ramirez used or carried a gun in relation to the distinct offenses of possessing and conspiring to possess marijuana with the intent to distribute. Only through the con-

structive amendment of the indictment to include those other drug trafficking crimes as potential predicate offenses was the jury supplied with a basis to convict Ramirez on the section 924(c) charge. It is clear, in other words, that but for the constructive amendment, a reasonable jury would have acquitted Ramirez on the firearms charge.

Notwithstanding Ramirez's failure to raise the issue below, we therefore conclude in view of the plain nature of the error that it is appropriate to REVERSE his conviction on Count 3 of the superseding indictment, to VACATE his sentence, and to REMAND the case to the district court for re-sentencing.